AARON TILLMANN (ISB # 11442)
101 SW Main St., Suite 1905
Portland, OR 97204
(503) 683-8113
aaron@tillmannlaw.com

ROBERT MITCHELL (*Pro Hac Vice*)
1020 N. Washington
Spokane, WA 99201
(509) 327-2224
bobmitchellaw@gmail.com

*Attorneys for Plaintiff, JERRY BOURQUIN*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**
**EASTERN DIVISION**

| | |
|---|---|
| JERRY BOURQUIN,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL RECOVERY SERVICES, LLC, (an Idaho Limited Liability Company); SMITH DRISCOLL & ASSOCIATES, PLLC (an Idaho Limited Liability Company); and BRYAN N. ZOLLINGER, a debt collector,<br><br>Defendants. | NO.<br><br>PLAINTIFF'S COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND THE IDAHO CONSUMER PROTECTION ACT |

COMES NOW Plaintiff, JERRY BOURQUIN, by and through his counsel, AARON TILLMAN and ROBERT MITCHELL, and complains against the Defendants as follows:

## I. STATEMENT OF THE CASE

1.1 Defendants are medical debt collectors that specialize in collecting stale medical debts that were paid, partially paid, or never owed.

1.2 Medical debt is the largest category of derogatory debt reported on credit reports.[1]

1.3 Medical debt collection accounted for 14% of collection complaints to the CFPB, more than auto loan debt, payday loan debt, mortgage debt, and student loan debt combined.[2]

1.4 Medical debt is a leading cause of bankruptcies. The American Journal of Public Health reported in a survey of randomly sampled bankruptcy filers from 2013-2016, 59% of respondents believed that medical debt contributed to their bankruptcy. *See* American Journal of Public Health, *Medical Bankruptcy: Still Common Despite the Affordable Care Act* (Mar. 2019).[3]

1.5 The price comparison website, Nerdwallet.com, analyzed data from the U.S. Census, Centers for Disease Control, the federal judiciary, and the Commonwealth Fund (a private foundation that promotes access, quality and efficiency in the health-care system), and reported: Bankruptcies resulting from unpaid medical bills will affect nearly 2 million people this year—making health care the No. 1 cause of such filings. CNBC, *Medical Bills Are the Biggest Cause of US Bankruptcies: Study*, 25 Jun 2013.[4]

1.6 These facts are shocking given that 2/3 (two-thirds) of consumers with medical debt have health insurance.

---

[1] *See* CFPB Report: Market Snapshot, Third-Party Debt Collections Tradeline Reporting, Jul 18, 2019 (available at URL https://files.consumerfinance.gov/f/documents/201907_cfpb_third-party-debt-collections_report.pdf) (Accessed July 29, 2021).

[2] CFPB, Consumer Response Annual Report: January 1– December 31, 2020, at 29 (Mar. 2019), available at https://files.consumerfinance.gov/f/documents/cfpb_2020-consumer-response-annual-report_03-2021.pdf (Accessed July 29, 2021).

[3] Available at the URL http://www.pnhp.org/docs/AJPHBankruptcy2019.pdf (Accessed July 29, 2021)

[4] At the URL: https://www.cnbc.com/id/100840148 (Accessed July 29, 2021).

1.7 The Kaiser Family Health/New York Times Medical Bills Survey found that in 2015, 62% of consumers with medical debt had health insurance at the time of their first treatment and an additional 13% of obtained insurance at some point during their treatment.[5]

1.8 Yet, medical debt is one of the largest categories of debt in collection in America, accounting for 58 percent of collection tradelines.[6]

1.9 The largest physicians group in the nation is currently the subject of a class action lawsuit involving surprise medical debts and balance billing. *See Sia Fraser et al. v. Team Health Holdings, Inc.*, U.S. Dist. Court for the Northern District of California, Civil Cause No. 3:20-cv-04600.

1.10 Other similar cases are playing out across the nation. *See* "The Nonprofit Hospital That Makes Millions, Owns a Collection Agency and Relentlessly Sues the Poor".[7]

1.11 Balance billing and surprise medical debts are a common complaint in the United States. *See* **"The Nonprofit Hospital That Makes Millions, Owns a Collection Agency and Relentlessly Sues the Poor"**[8].

---

[5] At the URL: https://www.kff.org/wp-content/uploads/2016/01/8806-the-burden-of-medical-debt-results-from-the-kaiser-family-foundation-new-york-times-medical-bills-survey.pdf (Accessed July 29, 2021).

[6] *See* CFPB Report: Market Snapshot, Third-Party Debt Collections Tradeline Reporting, Jul 18, 2019 at 5 (available at URL https://files.consumerfinance.gov/f/documents/201907_cfpb_third-party-debt-collections_report.pdf) (Accessed July 29, 2021).

[7] Pro Publica article at https://www.propublica.org/article/methodist-le-bonheur-healthcare-sues-poor-medical-debt (Accessed July 12, 2021).

[8] Pro Publica article at https://www.propublica.org/article/methodist-le-bonheur-healthcare-sues-poor-medical-debt

1.12 Medical billing errors are unfortunately a fact of life for just about anyone who has ever walked into a doctor's office or hospital, as insurance payments and patient billing are rife with error.[9]

1.13 This is unsurprising because patients often are not told what they really owe: "surprise medical debts."

1.14 As this case illustrates, the problem is further complicated by collection agencies delaying collection of medical debts for years after medical services are received.

1.15 Surprise medical debts are so pervasive that Congress was forced to include protections against surprise medical billing in the OMNIBUS SPENDING ACT in 2020, which was drafted in response to COVID. *See* H.R. 133, Consolidated Appropriations Act, 2021, 116th Congress (2019-2020).

1.16 However, even prior to the COVID-19 pandemic further complicating the problem, "surprise medical debts" and the practice of "balance billing" of amounts that were covered by insurance, partially covered by insurance, never actually owed, were discharged to Charity Care, or should have been discharged to Charity Care, gained national attention,. *See e.g.,* Stopping the Outrageous Practice of Surprise Medical Bills Act of 2019, S.B. 1531, 116th Cong. (2019 – 2020).

[9] *See* CFPB Report: Consumer credit reports: A study of medical and non-medical collections (Dec. 2014) at 6 - 7, at the URL: https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf (Accessed July 29, 2021).

1.17 Medical Billing transparency rules are already having an effect on the healthcare marketplace. *See* "Hospitals Often Charge Uninsured People the Highest Prices, New Data Show" dated July 6, 2021.[10]

1.18 And, the Biden Administration is currently enacting legislation to sanction hospitals that refuse pricing transparency. *See* "U.S. Proposes Raising Penalty for Hospitals That Don't Publish Prices - - Larger hospitals would have to pay as much as $2 million annually if they don't make their prices public under the proposed rule."[11]

1.19 Medical debt collectors are part of a larger industry with well-reported abuses.

1.20 Debt collection abuses consistently rank as one of the top consumer complaints reported to the Federal Trade Commission[12] and the Consumer Financial Protection Bureau (CFPB).

1.21 In a 2014-2015 survey by CFPB, 32% of consumers with a credit record had been contacted by at least one creditor or collector trying to collect one or more debts during the year prior to the survey." *Consumer Fin. Prot. Bureau, Consumer Experiences with Debt Collection: Findings from the CFPB's Survey of Consumer Views on Debt 5*, 46 (Jan. 2017).[13]

---

[10] *See* The Wall Street Journal at wsj./articles/ hospitals-often-charge-uninsured-people-the-highest-prices-new-data-show-11625584448?mod+ searchresults_pos6& page=2. (Accessed July 20, 2021.)

[11] *See* The Wall Street Journal at https://www.wsj.com/articles/u-s-proposes-upping-penalty-for-hospitals-that-dont-publish-prices-11626725949?st=tue0sstfx5k6lpr&reflink=article_email_share. (Accessed July 20, 2021.)

[12] *See* Federal Trade Commission, Consumer Sentinel Network: Data Book 2018, at 7 (Feb. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf (Accessed July 29, 2021) (reporting that with more than 475,000 complaints generated in 2018, debt collection was the second leading source of complaints collected by the FTC).

[13] *See* https://files.consumerfinance.gov/f/documents/201701_cfpb_Debt-Collection-Survey-Report.pdf (Accessed July 29, 2021) (hereinafter CFPB 2017 Consumer Views Report).

1.22 One debt buyer, Encore Capital Group, which files lawsuits as Midland Credit, has claimed that 20 percent of Americans either owe Encore Capital money or have owed it money in the past. *See* Chris Albin-Lackey, Human Rights Watch, *Rubber Stamp Justice: US Courts, Debt Buying Corporations, and the Poor* 11 (Jan. 2016).[14]

1.23 We are living in an era where anyone who obtains medical services risks being sent to collection.

1.24 Many Americans' only brush with the debt collection industry is when a medical bill that should have – or was – paid by insurance shows up unexpectedly as a derogatory mark on the consumer's credit report, or the news comes in the form of a rude telephone call from a bill collector, or worse, service of a summons to appear in court. *Id*.

1.25 Many middle-class Americans who are responsible, pay for health insurance, and pay their bills, find themselves in medical debt collection, simply because medical billing systems are broken. *Id*.

1.26 Unfortunately, Americans have no control over whether their medical providers competently account for out-of-pocket and insurance payments to their accounts, and they have even less control over what happens once the bill has been turned over to a debt collector, given the widespread abuses in that industry.

1.27 The account Defendants sought to collect in this case falls into the same category as those addressed by the above-referenced lawsuits, U.S. Congress' new legislation, and our President's executive action(s).

---

[14]https://www.hrw.org/sites/default/files/report_pdf/us0116_web.pdf (accessed July 29, 2021).

1.28 In this case, Plaintiff underwent gallbladder surgery in 2017. Plaintiff had healthcare insurance. The providers' negligence nearly killed Plaintiff. Plaintiff expressed his disappointment. The providers offered to waive all of Plaintiff's out-of-pocket costs as a good faith gesture and to convince Plaintiff to forgo legal action against the providers.

1.29 In July of 2021, nearly 4 years later, Defendants sued Plaintiff in a distant forum and served Plaintiff's elderly father while Plaintiff was on vacation.

1.30 Defendants know that Defendant's frivolous debt collection lawsuit was filed in a distant forum because: 1) Defendants' own debt collection lawsuit seeks payment for services received at "Community Care Pocatello;" 2) Defendants served the debt collection lawsuit at Plaintiff's home in Pocatello; yet 3) Rather than filing the debt collection lawsuit in Pocatello, Defendants filed the debt collection lawsuit in Idaho Falls.

1.31 Pocatello is in Bannock County. Idaho Falls is in Bonneville County. And, the drive between the two is approximately 1 hour.

1.32 Not surprisingly, the Bonneville County Courthouse is 3 minutes from Defendants' law offices.

## II. PARTIES

2.1 Plaintiff, JERRY BOURQUIN is a resident of Bannock County, Idaho.

2.2 In 2017, Plaintiff obtained medical services at Community Care Pocatello, which he used primarily for personal, family, and household purposes.

2.3 Defendants allege that Plaintiff defaulted on the medical account(s) associated with the medical services by failing to make timely payments.

2.4 Plaintiff is therefore a "consumer" and "debtor" as defined by 15 U.S.C. § 1692(a)(3) (the Fair Debt Collection Practices Act) and Plaintiff acted as a "consumer" and "debtor" at all times relevant to this litigation.

2.5 Defendants, MEDICAL RECOVERY SERVICES, LLC, (an Idaho Limited Liability Company), (hereinafter "MRS" or "Defendants"), are a "debt collectors" as defined by 15 U.S.C. § 1692(a)(6) (the Fair Debt Collection Practices Act), and Defendants acted as such at all times relevant to this litigation.

2.6 MRS regularly collects defaulted accounts originally owed to others.

2.7 The principal purpose of MRS's business is the collection of defaulted accounts originally owed to others.

2.8 MRS conducts business in this state pursuant to File No. 66293.

2.9 MRS made attempts to collect the debt at the heart of this litigation.

2.10 Defendant, BRYAN N. ZOLLINGER (an Idaho debt collection attorney and debt collector) (hereinafter "ZOLLINGER" or "Defendants") is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6) (the Fair Debt Collection Practices Act), and Defendant acted as such at all times relevant to this litigation.

2.11 ZOLLINGER regularly collects defaulted accounts originally owed to others.

2.12 The principal purpose of ZOLLINGER's law practice and business is the collection of defaulted accounts originally owed to others.

2.13 ZOLLINGER practices law in Idaho, pursuant to Idaho Bar No. 8008.

2.14 ZOLLINGER made attempts to collect the debt at the heart of this litigation.

2.15 Defendant, SMITH DRISCOLL & ASSOCIATES, PLLC (an Idaho Limited Liability Company) (hereinafter "SMITH" or "Defendants") are a "debt collectors" as defined by 15 U.S.C. § 1692(a)(6) (the Fair Debt Collection Practices Act), and Defendants acted as such at all times relevant to this litigation.

2.16 SMITH regularly collects defaulted accounts originally owed to others.

2.17 The principal purpose of SMITH's business is the collection of defaulted accounts originally owed to others.

2.18 SMITH conducts business in this state pursuant to File No. 236515.

2.19 SMITH made attempts to collect the debt at the heart of this litigation.

## III. JURISDICTION AND VENUE

3.1 Jurisdiction and Venue in the United States District Court, District of Idaho, are appropriate where this dispute involves predominant issues of federal law, and where all acts at issue and described herein occurred in this district, and where the injury to Plaintiff occurred in this district, and where Plaintiff is a resident of this district, and where the Defendants are licensed to conduct business in this District, and where Defendants conduct substantial business in this district, and where this case involves violations of federal statute. (28 U.S.C. §1332; 28 U.S.C. §1391(b); and 28 U.S.C. §1331).

3.2 Defendants are liable unto Plaintiff pursuant to the provisions of the Fair Debt Collection Practice Act, 15 U.S.C. §1692 et. seq., as well as other applicable federal and state laws.

## IV. FACTS

4.1 Plaintiff, JERRY BOURQUIN is a resident of Bannock County, Idaho.

4.2 In September of 2017, Plaintiff obtained medical services at Community Care Pocatello, which he used primarily for personal, family, and household purposes.

4.3 Defendants allege that Plaintiff defaulted on the medical account(s) associated with the medical services by failing to make timely payments.

4.4 However, because the medical providers nearly killed Plaintiff during surgery, the medical providers waived all of Mr. Bourquin's out-of-pocket costs.

4.5 In July of 2021, Defendants filed a debt collection lawsuit against Plaintiff to collect the medical debts that the providers waived.

4.6 Many of the charges at issue in the debt collection lawsuit are the result of medical negligence and negligent billing practices.

4.7 Plaintiff does not owe the charges listed in Defendants' debt collection lawsuit.

4.8 Worse yet, "Community Care Pocatello," the facility where Plaintiff received the medical services, is located in Bannock County, Idaho.

4.9 Plaintiff also resides in Bannock County.

4.10 Defendants' know that Plaintiff resides in Bannock County, because that is where Defendants served Plaintiff with Defendants' debt collection lawsuit.

4.11 Yet, Defendants filed the medical debt collection lawsuit in Bonneville County.

4.12 Bonneville County District Court is approximately 1 hour from Plaintiff's home.

4.13 Bonneville County District Court is approximately 3 minutes from Defendants' law offices.

4.14 Defendants' filed the debt collection lawsuit in a forum distant to Plaintiff in attempt to obtain a default judgment against Plaintiff.

4.15 This is not the first time Defendants have been sued in this court for collection violations. See *Mecham v. Medical Recovery Services, LLC, et al*, Civil Cause No. 4:15-cv-00281-EJL; and *Carson v. Medical Recovery Services, LLC, et al*, Civil Cause No. 4:14-cv-00379-REB.

4.16 Defendants either knew or should have known that Plaintiff does not owe the debts at the heart of Defendants' debt collection lawsuit.

4.17 The natural consequences of Defendants' actions were to threaten, harass, annoy, oppress and abuse Plaintiff.

4.18 Defendants' actions were unfair, deceptive, and outrageous.

4.19 As a direct and proximate result of Defendants' unfair, deceptive, and outrageous actions, Plaintiff suffered actual economic damages and injuries where he was forced to take time away from otherwise economically productive activities to research and investigate Defendants' frivolous allegations and threats.

4.20 As a direct and proximate result of Defendants' unfair, deceptive, and outrageous actions, Plaintiff suffered emotional distress and other emotional damages and injuries where he was forced to take time away from vacation to address Defendants' frivolous allegations and threats.

4.21 Defendants served Plaintiff's elderly father while Plaintiff was out-of-town and on vacation with his wife.

4.22 Plaintiff's family became aware of Defendants' abuses while Plaintiff was on a family vacation.

4.23 Defendants' abuses caused Plaintiff frustration, anxiety, humiliation and other forms of severe emotional distress.

## V. FAIR DEBT COLLECTION PRACTICES ACT VIOLATION

(Application of the Statute)

5.1 Plaintiff re-alleges paragraphs I. through IV., inclusive as though fully set forth herein.

5.2 Pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), a "consumer" or "debtor" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

5.3 Pursuant to the FDCPA, the term "debt" means: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

5.4 Pursuant to the FDCPA, the term "debt collector" means: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

5.5 The FDCPA also applies to attorneys who "regularly" attempt to collect third party debts. See *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994).

5.7 An attorney is a "collection attorney" or "debt collector" and "regularly" collects the debts of another if the volume of his collection cases is high, regardless of what percent of his practice the collection cases actual represent. See *Garrett v. Derbes*, 110 F.3d 317 (5th Cir. 1997); holding that an attorney who collected against 639 different individuals in a nine-month period satisfied the requirement that he "regularly" collected debts for another although those 639 cases only represented .5% of his practice. He was regularly collecting consumer debts because that volume was great enough to meet the threshold.).

5.8 Defendants are "debt collectors" as defined by the FDCPA, and Defendants attempted to collect a consumer debt from Plaintiff.

5.9 The FDCPA applies in this case because the Plaintiff is a "debtor," the debt at the heart of this case is a "consumer debt," which arose from a transaction in which the services are primarily for personal, family, or household purposes, and the Defendants are "debt collectors" which attempted to collect a debt originally owed to a third party.

## VI. FIRST CAUSE OF ACTION

Fair Debt Collection Practices Act Violation

6.1 Plaintiff re-alleges paragraphs I. through V., inclusive as though fully set forth herein.

6.2 The Fair Debt Collection Practices Act (hereinafter "FDCPA") states in pertinent part that a debt collector filing a debt collection lawsuit against a consumer must: "…**bring such action only in the judicial district or similar legal entity—(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action**." 15 U.S.C. § 1692i. (Emphasis added).

6.3 The FDCPA further states in pertinent part that debt collectors cannot:

A. "…engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

B. Falsely represent "..the character, amount, or legal status of a debt…." 15 U.S.C. § 1692e(2).

C. Use "…any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

D. Use "…unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

E. Collect or attempt to collect "any…unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

6.4 In this case, Defendants violated the above-referenced statutory provisions by:

A) Filing a debt collection lawsuit against Plaintiff in a distant judicial district where Plaintiff neither entered the contract nor resided at the time the lawsuit was filed;

B) Falsely representing through legal process that the distant judicial district was the proper venue and had personal jurisdiction over Plaintiff, which it did not;

C) Intentionally filed the debt collection lawsuit in a distant forum to harass, oppress, or abuse Plaintiff and to obtain a default judgment by making it logistically more difficult to defend against Defendants' frivolous debt collection lawsuit;

D) Filing a debt collection lawsuit to collect unenforceable, disputed, and waived accounts;

E) Attempting to prejudice Plaintiff by waiting years to file the frivolous debt collection lawsuit;

F) Seeking an amount, plus interest, costs, and attorney's fees to which Defendants are not legally or equitably entitled;

G) Engaging on other unfair and deceptive practices described *supra*.

6.5 Defendants' actions were unfair, deceptive, oppressive, outrageous, willful, wanton, unfair, and unconscionable and intentionally designed to injure and damage Plaintiff.

6.6 Defendants' unfair, deceptive, oppressive, outrageous, intentional, willful, wanton, unfair, unconscionable and intentional acts and practices injured and damaged Plaintiff.

6.7 Defendants' unfair, deceptive, oppressive, outrageous, intentional, willful, wanton, unfair, unconscionable and intentional acts and practices were a direct and proximate cause of Plaintiff's injuries and damages.

## VII. SECOND CAUSE OF ACTION

(Consumer Protection Act)

7.1 Plaintiff re-alleges paragraphs I. through VI., inclusive as though fully set forth herein.

7.2 Idaho's Consumer Protection Act (hereinafter "ICPA") was enacted to protect consumers like Plaintiff from misleading, false, or deceptive practices like those at issue herein.

7.3 Defendants' unfair, false, misleading and deceptive acts and practices, as described *supra*., violated Idaho Code §§ 48-603(17) and 48-603(18).

7.4 Plaintiff was injured and damaged by Defendants' unfair, false, misleading and deceptive acts and practices.

7.5 Defendants' unfair, false, misleading and deceptive acts and practices are a direct and proximate cause of Plaintiff's injuries and damages.

7.6 Defendants' unfair, false, misleading and deceptive acts and practices were intentional, willful, wanton, unfair, unconscionable, and outrageous.

7.7 Defendants' unfair, false, misleading and deceptive acts and practices illustrate why an injunction is necessary to protect Plaintiff and other Idaho consumers from similar harm.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants as follows:

A. For an Injunction preventing Defendants from ever again filing a debt collection lawsuit against an Idaho resident in a District Court in a County where the consumer did not enter the contract upon which the lawsuit is based, and where the consumer does not reside at the time the lawsuit is commenced, pursuant to Idaho's Consumer Protection Act;

B. For Actual and Compensatory damages against Defendants, in an amount to be proven at trial, pursuant to Idaho Code § 48-608(1) *et seq*., 15 U.S.C. § 1692 *et seq*., and various common law claims;

C. For Statutory damages of not less than $1,000.00 against Defendants, pursuant to Idaho Code § 48-608(1);

D. For Statutory damages against Defendants, in the amount of $1,000.00, pursuant to 15 U.S.C. § 1692 *et seq*.;

E. For Incidental and Consequential damages against Defendants, in an amount to be proven at trial;

F. For Punitive damages of not less than $25,000.00, for Defendants' flagrant statutory violations, pursuant to Idaho Code § 48-608(1);

G. For costs and reasonable attorneys' fees against Defendants, in an amount to be proven at trial, pursuant to Idaho Code § 48-608(1) *et seq*., and 15 U.S.C. § 1692 *et seq*.;

H. For interest on the above amounts as authorized by law;

I. For other relief as the Court deems just and equitable; and

J. For leave to amend this complaint as needed and as required, including leave to seek Fed. R. Civ. P. 23 status, if information becomes available through discovery supporting numerocity, commonality, and the need for class action status.

## IX. REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests a trial by jury.

DATED this 5th day of August, 2021.

Respectfully submitted,

s//*Aaron R. Tillmann*
AARON TILLMANN (ISB # 11442)
101 SW Main St., Suite 1905
Portland, OR 97204
(503) 272-8986
aaron@tillmannlaw.com

s//*Robert W. Mitchell*
ROBERT MITCHELL (*Pro Hac Vice*)
1020 N. Washington
Spokane, WA 99201
(509) 327-2224
bobmitchellaw@gmail.com

Attorneys for Plaintiff